UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER CHARLES BITTICK,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 15-0528-JPR<br><br>**MEMORANDUM OPINION AND ORDER REVERSING COMMISSIONER** |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed December 4, 2015, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1963. (Administrative Record ("AR") 136.) He completed the 11th grade and worked as a tow-truck operator and truck driver. (AR 152-53, 159.)

On February 15, 2012, Plaintiff applied for DIB, alleging that he had been unable to work since June 4, 2011, because of a "[k]nee injury." (AR 63, 136, 152.) After his application was denied, he requested a hearing before an Administrative Law Judge. (AR 92-93.) A hearing was held on August 22, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 32-62.) In a written decision issued September 20, 2013, the ALJ found Plaintiff not disabled. (AR 13-21.) On January 22, 2015, the Appeals Council denied Plaintiff's request for review and incorporated newly submitted evidence into the administrative record.[1] (AR 1-5.) This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and

---

[1] Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also 20 C.F.R. § 404.970(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163; accord Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).

decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; <u>see</u> <u>Cooper v.</u>
(continued...)

his past work; if so, he is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 4, 2011, the alleged onset date. (AR 15.) At step two, he concluded that Plaintiff had the severe impairments of "left knee sprain and strain." (Id.) He found that Plaintiff had complained of "right knee repetitive trauma, hip pain, sleep apnea, osteoarthritis, and [being] overweight," but that those conditions had only a minimal effect on his ability to engage in work-related activities and were therefore not severe. (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 15-16.) At step four, he

---

[2] (...continued)
Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

found that Plaintiff had the RFC to perform a full range of light work; specifically, he could

> lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently.  He can stand and walk for about six hours out of an eight hour workday, and he can sit for about six hours out of an eight hour workday.

(AR 16.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work but could perform other work that existed in sufficient numbers in the national economy.  (AR 19-20.)  Accordingly, he found Plaintiff not disabled.  (AR 21.)

**V.   DISCUSSION**

Plaintiff contends that the ALJ erred in failing to (1) provide clear and convincing reasons for discounting his credibility and (2) properly consider his "severe impairment of obesity."  (J. Stip. at 4.)  Because the Court agrees that the ALJ did not properly assess Plaintiff's credibility, it does not reach his other contention.

    A.   <u>The ALJ Failed to Properly Assess Plaintiff's Credibility</u>

        1.   <u>Applicable law</u>

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  <u>See</u> <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C.

§ 423(d)(5)(A).'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).  The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

    2. <u>Relevant background</u>

  In an undated disability report, Plaintiff wrote that he had been unable to work since June 4, 2011, because of a knee injury. (AR 152.) In a later disability report, Plaintiff reported that he was "[a]lways in pain," his "knee gives out with no warning," and "even household chores are difficult." (AR 173, 176.)

  In a November 2011 questionnaire completed as part of a medical assessment, Plaintiff checked boxes indicating that he had no difficulty with personal self-care activities and could lift, push, and pull "heavy objects" but had "extra discomfort"; climb a flight of stairs with "a lot of difficulty"; kneel, bend, and squat with "a lot of difficulty"; and sit or stand and walk for only 15 to 60 minutes at a time. (AR 252-54.)

  At the August 22, 2013 hearing, Plaintiff testified that he had hurt his left knee when he slipped and fell while trying to get into his truck at work. (AR 40-41.) As a result, his leg became "uncomfortable" after sitting for about 45 minutes, and he needed to move it. (AR 38.) Plaintiff could stand for 15 to 20 minutes at a time and walk 20 to 25 feet with a cane. (AR 38-39.) He could lift only the weight of a gallon of milk because

he "d[id]n't trust [his] left knee" and was afraid it would "go out from under [him]." (AR 49.)

Plaintiff lived with his son and nephew. (AR 36.) He did not help with cleaning, cooking, washing dishes, or other housework, but "once in a while" he did his own laundry or went to the grocery store.[3] (AR 37-38.) Plaintiff could no longer drive a truck, but he had a driver's license and had last driven a car the day before the hearing. (AR 36-37.) When he drove, he usually went to the store or a friend's house and back. (AR 51.) If Plaintiff had to drive a long distance, he had someone drive him because he had to "move [his] leg all the time" in order to be comfortable. (AR 51-52.) Plaintiff testified that he could not work at a full-time "desk job" because he couldn't "get [his left] leg comfortable," stating that the discomfort was not a "throbbing pain, it's just uncomfortable." (AR 45-46.)

In a January 2014 questionnaire completed as part of a medical assessment, Plaintiff checked boxes indicating that his self-care activities were "uncomfortable" and he performed them slowly. (AR 385.) He could lift, push, and pull only "light to medium objects"; climb a flight of stairs, kneel, bend, and squat with "[a] lot of difficulty"; and sit or stand and walk between 15 and 30 minutes at a time.[4] (AR 385-86.)

---

[3] Plaintiff testified that before his injury, he helped "a little bit" with the household chores and cooked "[v]ery little." (AR 46-47.) Plaintiff said he no longer cooked because he "ha[s] just never been a big cooker," not because of his injury. (Id.)

[4] Plaintiff submitted to the Appeals Council Dr. David L. Wood's January 2014 "Agreed Medical Re-examination Report," which (continued...)

### 3. Analysis

The ALJ found that although Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible. (AR 16.) As discussed below, he failed to provide sufficiently clear and convincing reasons for doing so.

The ALJ determined that "objective findings" failed to support Plaintiff's alleged limitations (AR 18), but he simply summarized the medical evidence without pointing to anything specific that was inconsistent with Plaintiff's subjective complaints (see AR 16-18). Nor did he reject or discredit any of the medical-opinion evidence. In fact, much of the medical evidence supports Plaintiff's alleged limitations. A September 2011 MRI of Plaintiff's left knee showed mild chondromalacia,[5] degenerative changes of the medial meniscus without evidence of a tear, possible "minimal fraying" of the medial meniscus, possible mild chronic spraining and scarring, and patellar tendinosis.[6]

---

[4] (...continued) included the questionnaire. (AR 385.) Although it postdates the ALJ's decision by a few months, the Appeals Council made it part of the record, and the Court assumes the Council considered it to the extent it was relevant to the time period predating the ALJ's decision. See Brewes, 682 F.3d at 1162-63.

[5] Chondromalacia is a condition in which the patella rubs against one side of the knee joint, causing irritation and pain. Chondromalacia, Ceders-Sinai, https://www.cedars-sinai.edu/Patients/Health-Conditions/Chondromalacia.aspx (last accessed May 2, 2016).

[6] Tendinosis is a degeneration of the tendon's collagen in
(continued...)

(AR 329-30.) Plaintiff's doctors often noted that he had decreased range of motion (AR 235, 275, 311, 344, 348, 354) and tenderness of the left knee (AR 195, 207, 218, 227, 229, 231, 233, 235, 247, 276, 311, 321-22, 344, 348, 354) and walked with an antalgic gait and a limp (AR 218, 227, 229, 231, 233, 235, 310). Plaintiff alleged that as result of his condition, he had difficulty climbing stairs, kneeling, and squatting, and many of his doctors found that he should avoid such activities. (See AR 207-08 (June 2011, doctor placing Plaintiff on "modified activity," with no climbing stairs or ladders, squatting, kneeling, or driving his company vehicle), 219 (June 2011, doctor stating, "no climbing stairs or ladders" and "unable to drive company vehicle"), 227 (Aug. 2011, doctor noting, "[n]o climbing stairs or ladders," "[n]o squatting or kneeling," "[u]nable to drive company vehicle"), 229 (same), 231-32 (same), 233-34 (Aug. 2011, doctor noting, "[n]o climbing stairs or ladders" and "[n]o squatting or kneeling"), 236 (Aug. 2011, doctor noting that Plaintiff must wear brace and could not climb stairs or ladders, squat, or kneel), 311 (May 2012, noting that Plaintiff had difficulty squatting and kneeling); but see AR 225 (July 2011, doctor releasing Plaintiff to "[r]egular job duty"), 238 (Sept. 2011, doctor releasing Plaintiff to full duty without restriction).)[7]  Because the ALJ did not reject any of these

---

[6] (...continued)
response to chronic overuse. Karim M. Kahn, M.D., PhD. et al., Overuse Tendinosis, Not Tendinitis, 28 The Physician and Sportsmedicine (May 2000).

[7] Dr. Wood's January 2014 "Agreed Medical Re-examination
(continued...)

11

doctors' opinions, he erred in concluding that the medical evidence failed to support Plaintiff's subjective complaints.

Nor was Plaintiff's treatment inconsistent with his complaints. His left-knee condition was initially treated with medication, physical therapy, a knee brace, and injections. (See, e.g., AR 198-205, 209-17, 327-28 (physical therapy notes), 276 (June 2011, medication and injection), 225 (July 2011, injection), 235 (Aug. 2011, noting Plaintiff's medications and that only response to injection was that knee was "puffy"), 249 (Nov. 2011, Dr. David L. Wood recommending further injections and, if injections not successful, surgery), 362 (May 2012, noting that Plaintiff was prescribed knee brace and medications Ultram and Anaprox).)[8] In April 2013, Plaintiff underwent left-knee arthroscopic surgery followed by more physical therapy. (AR 334-36; see also AR 332 (Dr. Wood recommending arthroscopic surgery), 344, 348, 354, 362 (Dr. Manuel Anel recommending arthroscopic surgery), 368 (Dr. Anel noting that Plaintiff

---

[7] (...continued)
Report," which Plaintiff submitted to the Appeals Council, similarly stated that Plaintiff's condition was "permanent and stationary" for purposes of his worker's-compensation claim and that he was precluded from "repetitive kneeling, squatting, crawling, and climbing and from prolonged weightbearing for the left knee condition." (AR 372, 381.)

[8] Utram, a brand name for tramadol, is a narcotic used to relieve moderate to moderately severe pain. Tramadol, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (last updated Apr. 21, 2016). Anaprox, a brand name for naproxen, is a nonsteroidal antiinflamatory drug used to relieve pain, tenderness, swelling, and stiffness caused by arthritis and other conditions. Naproxen, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last updated Sept. 15, 2015).

underwent "left knee arthroscopy with postoperative rehabilitative physical therapy").) In August 2013, Dr. Anel noted that despite the surgery, Plaintiff's left knee remained "significantly symptomatic," with pain, stiffness, some instablility, "significant crepitation," and limited range of motion. (AR 368.) Dr. Anel noted that Plaintiff's left knee would lock and give way and that he was using a single crutch to walk because of "feelings of instability." (Id.) Dr. Anel recommended a total knee replacement. (Id.) The ALJ therefore erred in finding, without adequate explanation, that Plaintiff's complaints were "not substantiated by the objective medical evidence." (AR 16.)

The ALJ also discounted Plaintiff's subjective complaints based on his daily activities. A plaintiff's daily activities can serve as a valid reason for discounting his credibility when they either indicate "capacities that are transferable to a work setting" or are "inconsistent with the alleged symptoms." Molina, 674 F.3d at 1112-13. Here, the ALJ noted that Plaintiff had a driver's license and that he drove, shopped, did his own laundry, and could lift a gallon of milk. (AR 18.) But Plaintiff in fact testified that his activities were somewhat more limited than that: he went to the store and did laundry only "once in a while" (AR 38) and had someone drive him if he had to travel long distances (AR 51-52). Plaintiff, moreover, testified that he didn't do any other household chores, like washing dishes or cooking. (AR 37-38.) In any event, nothing about Plaintiff's limited activities was inconsistent with his alleged symptoms, nor do they indicate capacities that are transferable to a work

setting.  As such, the ALJ erred in relying on Plaintiff's daily activities to discount his credibility.  See Aparicio v. Colvin, ___ F. App'x ___, 2015 WL 9461608, at *2 (9th Cir. Dec. 28, 2015) (ALJ erred in discounting credibility based on Plaintiff's ability to do housework with rest breaks); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.").

    The ALJ also discounted Plaintiff's credibility because "[t]here is no evidence [that Plaintiff] has had excruciating pain, such that he has had to [s]eek emergency room treatment." (AR 18.)  Plaintiff, however, never testified that his pain was "excruciating"; rather, he testified that the knee did not cause him "throbbing pain" but just made him "uncomfortable."  Indeed, many of his limitations seemed to be based on his knee "giving out" or arose from certain activities, such as climbing stairs, kneeling, and prolonged walking, that exacerbated his condition. In any event, as discussed above, Plaintiff clearly underwent significant treatment for his knee injury, including medication, injections, and surgery, even if he didn't seek treatment in an emergency room.

    Two of the ALJ's observations might provide some basis for discounting Plaintiff's credibility, however.  First, the ALJ noted that Plaintiff had stopped working only because his employer did not have work that he could perform with restrictions on climbing stairs or ladders, squatting, kneeling,

14

and driving company vehicles, not because he was unable to perform any work.[9] (AR 18); cf. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (as amended) (ALJ properly discounted credibility when plaintiff left job because he was laid off, not because he was injured). Second, the ALJ relied on a Social Security Administration employee's notation that he had met with Plaintiff in person but "did not notice a limp" or Plaintiff's having any difficulty sitting, standing, or walking. (AR 18, 149); 20 C.F.R. § 404.1529(c)(3) (in evaluating symptoms, ALJ will consider "observations by our employees"); SSR 96-7P, 1996 WL 374186, at *8 (July 2, 1996) ("In evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who previously interviewed the individual, whether in person or by telephone."). But in light of the errors discussed above, these two reasons, alone, are insufficient to support the ALJ's credibility determination.

    B.    <u>Remand for Further Proceedings Is Appropriate</u>

When, as here, an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true"

---

[9] Despite this observation and the many doctors' unchallenged opinions that Plaintiff could not do much if any climbing, squatting, kneeling, or driving, the ALJ did not include any such restrictions in the RFC. (See AR 16.)

15

rule to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Under the credit-as-true framework, three circumstances must be present before the Court may remand to the ALJ with instructions to award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020; Treichler, 775 F.3d at 1100-01. When, however, the ALJ's findings are so "insufficient" that a court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases); Treichler, 775 F.3d at 1101 (noting that remand for benefits is inappropriate when "there is conflicting evidence, and not all essential factual issues have been resolved"); see also Dominquez v. Colvin, 808 F.3d 403, 409 (9th Cir. 2015) (noting that when "outstanding issues . . . exist, the district court cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further

proceedings").

Here, remand for further proceedings is appropriate. It may be that the ALJ had adequate reasons to find Plaintiff not entirely credible and simply failed to express them; his findings are insufficient to enable the Court to tell. Moreover, even if some of Plaintiff's complaints should be credited – such as his asserted difficulties climbing and kneeling – it is not clear that all of them should be. Plaintiff's condition also appears to have worsened over time, so some limitations may have arisen at some point after his alleged onset date, in June 2011. Once the ALJ has determined which of Plaintiff's complaints should be credited, he must then reassess Plaintiff's RFC and whether sufficient jobs exist that he can perform. And although it appears that the ALJ adequately considered Plaintiff's obesity (see, e.g., AR 15, 17-18), on remand he may make any additional findings necessary regarding that condition. The ALJ may also explicitly address the new evidence submitted to the Appeals Council. Finally, although Plaintiff did not raise this issue, the ALJ should either expressly discredit the various doctors' opinions imposing additional limitations or consider incorporating some of those limitations into the RFC.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered

---

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the (continued...)

17

REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Opinion.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 6, 2016

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[10] (...continued)
cause for a rehearing."